UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

MICHAEL WILSON,

    Plaintiff,

v.

J. GASTELLO et al.,

    Defendants.

No. CV 16-09449-DOC (DFM)

MEMORANDUM AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND

## I.
## BACKGROUND

On November 15, 2016, Michael Wilson ("Plaintiff"), a prisoner at California Men's Colony in San Luis Obispo County ("CMC"), filed an "Affidavit/Declaration" in the United States District Court for the Northern District of California. Dkt. 1 ("Affidavit"). The Clerk of the Court provided Plaintiff with a blank Complaint by a Prisoner Form and a blank In Forma Pauperis Application. Dkt. 2, 3. On December 1, Plaintiff filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 and moved for leave to proceed in forma pauperis. Dkt. 5 ("Complaint"), 6. About three weeks later, the action

was transferred to the Central District of California, because the Complaint described events that occurred at CMC. See Dkt. 9. On January 5, 2017, this Court granted Plaintiff's application to proceed in forma pauperis. Dkt. 12. On March 6, Plaintiff moved to amend the Complaint, adding additional allegations. Dkt. 14 ("Supplement"). The Court interpreted Plaintiff's motion as a request to supplement the Complaint (Dkt. 17); the Court considers the Complaint and Supplement together.

In accordance with 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court must screen the Complaint to determine whether the action is frivolous or malicious; fails to state a claim on which relief might be granted; or seeks monetary relief against a defendant who is immune from such relief.

## II.
## DEFENDANTS

Construing Plaintiff's pleadings generously, Plaintiff brings the Complaint against at least 13 defendants: (1) J. Gastello, CMC Warden; (2) Scott Kernan, Secretary of Corrections; (3) L. Sprague, Chief Medical Officer at CMC; (4) Ojuri Adebambo, M.D.; (5) Camilo (referred to by Plaintiff as "Castillo") Guiang, primary care provider; (6) Mrs. Romans, Educational Principle; (7) Ms. Gomez, Vice Principal; (8) Ms. Knapp, Teacher; (9); M. Kon, Compliance/Appeals Coordinator; (10) K. Lino, Custody Appeals Coordinator; (11) R. Ochoa, Custody Appeals Analyst; (12) K. Cox, ACA Coordinator; and (13) S. Aguilera, primary care provider. Complaint at 2; Supplement at 2. Plaintiff may also seek to bring claims against (14) Ms. Mayton, Testing Coordinator; (15) Dr. Chaffee, optometrist; (16) Esther Fernandez, Nurse; (17) Benjamin Allen, Nurse; and (18) Brad T. Barcklay, "Psy. D." Complaint at 7; Supplement at 5-6, 8. Plaintiff does not state whether he brings his claims against the defendants in an official or individual capacity, or both. The Court therefore assumes that Plaintiff asserts his claims

against the defendants in their individual capacity only.

## III.
## SUMMARY OF ALLEGATIONS

Plaintiff is a "victim of an Organized Crime Ring and is unwilling to be . . . silenced . . . [by] criminals posturing as Doctors, Nurses, Surgeons, Appeals Coordinators." Complaint at 4. Plaintiff has "literally been tortured for over a decade." Supplement at 4. "[O]fficials, doctors, nurses, wardens, [and] associate wardens are all . . . colluding together to deny care . . . Plaintiff has 'grounds' of these officials perpetrating fraud, altering medical records, selling/peddling junk prescription glasses, old lenses, defective frames and creating all these medical issues by feeding prisoners … food without any nutritional value creating diabetes, high cholesterol, heart attacks, strokes." Id. CMC "medical staff" refuse referrals if prisoners do not volunteer to take experimental drugs. Id.

Plaintiff was left with a scar on his colon after a colonoscopy procedure at CMC. Complaint at 4. Gastello signed off, Dr. Guiang insisted on, and Dr. Adebambo performed the procedure. Id. at 4, 6. On November 8, 2014 at 10:00 a.m., Nurse Fernandez, Nurse Allen, and Dr. Adebambo "stated a new procedure would be done where air is blown in the colon," placed Plaintiff in a fetal position on a table, and pulled his pants down around his buttocks. Supplement at 6. The colonoscopy left Plaintiff with constant bloating, inability to pass gas, defecation six times a day, hemorrhoids, diverticulosis, weight loss, and irritable bowel syndrome. Complaint at 5-6. Sprague refuses to let Plaintiff see a specialist. Id. at 5; Supplement at 7. Plaintiff always runs out of toilet paper, but "medical" refuses to issue more and Plaintiff has to pay for his toilet paper supplies. Supplement at 6. Plaintiff was granted a high fiber diet, but was instead given fiber tablets. Complaint at 6; Supplement at 4.

Plaintiff was "hit on the side line of a football game," which flattened a

3

curve in his spine. Complaint at 5. He also has a large goiter growing on his sternum, which impedes his breathing. Id. "CMC" claims that x-ray results are negative, yet other x-rays show a "possible calcified Lymph Node" and that part of Plaintiff's rib cage is missing. Id. Plaintiff's x-ray results were "fraudulent." Id. at 4. Plaintiff was scheduled to have a large calcium stone removed from his salivary gland, but the surgery has not yet occurred. Id. at 5. Plaintiff suffers from severe degenerative disc disease, arthritis, and constant pain. Id. at 3, 5.

Dr. Chaffee gave Plaintiff "defective, old lenses," despite knowing that Plaintiff has glaucoma and chronic dry eye. Supplement at 5. Dr. Chaffee has refused to replace these lenses or renew Plaintiff's glaucoma medication.[1] Id.

"Medical staff" hides Plaintiff's medical file in "numerous windows" on the computer. Id. at 7.

Plaintiff's saliva is white with bubbles, clogging his throat, and he was diagnosed with "seratia marcesin." Id. Plaintiff asked Dr. Guiang for a saliva test, but Dr. Guiang said that Sprague had not authorized it. Id. "CMC" refused follow-up. Id. Plaintiff asked for his lungs to be checked due to breathing problems; "test[s] were performed," but Dr. Guiang and Sprague "embellished" the results. Id.

Sprague acted with deliberate indifference to Plaintiff's injuries. Id. at 5. Kernan is generally responsible for Plaintiff's custody and care. Id. at 4. Sprague, Kon, Lino, Ochoa, Cox, Dr. Aguilera, and Dr. Guiang are part of a

---

[1] Plaintiff attaches to the Affidavit an April 2011 memorandum by the California Department of Corrections and Rehabilitation, stating (1) Plaintiff wears a prosthetic left eye, (2) a doctor treated Plaintiff for glaucoma for four years before realizing that Plaintiff in fact had a cataract, and (3) Dr. Chaffee referred Plaintiff to a retinal specialist, who prescribed artificial tear drops. Dkt. 1 at 15-16.

Reasonable Accommodation Panel "involved in the deprivation of medical care." Supplement at 2. Gastello and Kernan have "judicial notice" of "failure to provide medical care treatment." Complaint at 3.

CMC is in violation of the Health Insurance Portability and Accountability Act ("HIPAA"), because Barcklay was given unauthorized access to Plaintiff's medical information.[2] Supplement at 8. As a result, Plaintiff was denied parole. Id. at 9.

Dr. Guiang deliberately did not fill out an entire medical form in order to defraud Plaintiff out of his "ADA benefits." Id.

Romans has defrauded "whoever funds the education department" by claiming that CMC cannot find educational information in Plaintiff's file, despite his participation in CMC education since 1994. Complaint at 7. This "scam" "fill[s] in seats" with "certain ethnic groups," specifically Mexican inmates. Id. Knapp is a union representative involved in this fraud, giving Mexican inmates GEDs while denying access to other ethnic groups. Id. Mayton also "pass[es] these Mexicans" while keeping other inmates "from taking GED." Id. Gomez is "rude and unprofessional" and also involved in the fraud. Id.

Plaintiff alleges cruel and unusual punishment, due process violations, [and] [HIPAA]" violations. Id. at 4. Plaintiff asks the Court to make CMC agree to a plan for his medical care and compensate him financially for "scar colonoscopy . . ., cervical injuries, [and] respi[ra]tory issues." Id. at 3.

///
///
///

---

[2] Plaintiff does not name CMC as a defendant. The Court therefore interprets Plaintiff's Complaint as bringing a HIPAA claim against Barcklay.

## IV.
## STANDARD OF REVIEW

The Court's screening of the Complaint under the foregoing statutes is governed by the following standards: A complaint may be dismissed for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether the complaint states a claim on which relief may be granted, its allegations of material fact must be taken as true and construed in the light most favorable to Plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). Since Plaintiff is appearing pro se, the Court must construe the allegations of the complaint liberally and afford Plaintiff the benefit of any doubt. Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)). A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (holding that to avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citation omitted)).

If the Court finds that a complaint should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). The Court should grant leave to amend if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (noting that "[a] pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment"). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the Court may dismiss without leave to amend. Cato, 70 F.3d at 1105-06.

## V.
## DISCUSSION

### A. Plaintiff's Failure to State Cognizable Legal Theories and Sufficient Facts

As an initial matter, Plaintiff's accusations against "CMC," "medical staff," "nurses," or other groups of individuals are not specific enough to permit the Court to evaluate Plaintiff's claims. Furthermore, Plaintiff's Complaint is almost entirely conclusory and bereft of dates, supporting facts, or explanations. Plaintiff accuses certain defendants of being part of a "Reasonable Accommodation Panel," but does not explain what role this panel played in the alleged deprivations. See Supplement at 2. Plaintiff accuses Dr. Guiang of deliberately partially filling out a medical form to "defraud" Plaintiff of his ADA benefits, but does not state when this occurred, what form

7

this was, why he believes Dr. Guiang acted deliberately, and how a partially-filled out form resulted the deprivation of benefits. See id. at 9. Plaintiff does not explain what he means when he says that Dr. Guiang and Sprague "embellished" results of lung tests, or when these tests occurred. See id. at 7. Plaintiff's statement that Romans, Knapp, Mayton, and Gomez favor Mexican inmates and are defrauding the government is entirely conclusory, with no supporting facts or dates. See Complaint at 7. As for Plaintiff's HIPAA claim against Barcklay, HIPPA provides no private right of action. Seaton v. Mayberg, 610 F.3d 530, 533 (9th Cir. 2010).

      Plaintiff also fails to allege personal involvement by most of the defendants in the alleged constitutional violations. In order to state a § 1983 claim, Plaintiff must allege that particular defendants personally participated in the alleged rights deprivations. See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff makes no allegations at all against Kon, Lino, Ochoa, Cox, and Dr. Aguilera, apart from their membership in the Reasonable Accommodation Panel. Plaintiff also fails to state sufficient facts to support his legal theories against Gastello and Kernan. Supervisory personnel generally are not liable under 42 U.S.C. § 1983 on any theory of respondeat superior or vicarious liability, in the absence of a state law imposing such liability. See Redman v. Cty. of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991). A plaintiff must allege either (1) the supervisor's personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011). Here, Plaintiff has done neither. Plaintiff's only allegation against Gastello is that he "signed off" on Plaintiff's colonoscopy and has "judicial notice" of the "failure to provide medical care." See Complaint at 3-4. Plaintiff's only allegation against Kernan is that he is "generally responsible" for Plaintiff's care and has "judicial notice" of the

alleged deprivations. See Supplement at 3-4. In these ways, Plaintiff fails to state claims on which relief might be granted, making dismissal appropriate.

**B.     Plaintiff's Deficient Deliberate Indifference Claim**

To establish an Eighth Amendment claim that prison authorities provided inadequate medical care, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976). Deliberate indifference may be manifested by the intentional denial, delay, or interference with a plaintiff's medical care, or by the manner in which the medical care was provided. Id. at 104-05. A plaintiff must demonstrate confinement under conditions posing a risk of "objectively, sufficiently serious" harm and that the officials had a "sufficiently culpable state of mind" in denying the proper medical care. Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002) (quoting Wallis v. Baldwin, 70 F.3d 1074, 1076 (9th Cir.1995)). A defendant "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). An inadvertent failure to provide adequate medical care, mere negligence or medical malpractice, a mere delay in medical care (without more), or a difference of opinion over proper medical treatment, are all insufficient to constitute an Eighth Amendment violation. Estelle, 429 U.S. at 105-07; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Plaintiff fails to state an Eighth Amendment claim against Sprague, Dr. Adebambo, Dr. Guiang, Dr. Chaffee, Nurse Fernandez, or Nurse Allen. Plaintiff alleges no facts suggesting a sufficiently culpable state of mind when (1) Dr. Guiang "insisted" on the colonoscopy and refused to give Plaintiff a saliva test without supervisory permission; (2) Sprague refused to let Plaintiff

see a "specialist" (setting aside that Plaintiff gives no specifics as to when this occurred or what Sprague said or did); (3) Dr. Adebambo, Nurse Fernandez, and Nurse Allen performed the colonoscopy with poor results; and (4) Dr. Chaffee gave Plaintiff bad lenses and failed to replace them or renew Plaintiff's glaucoma medication. Furthermore, Plaintiff alleges no facts suggesting that these acts reflect anything more than, at most, negligence or malpractice. Plaintiff has not stated an Eighth Amendment claim on which relief may be granted, even taking his allegations as true.

## VI.
## CONCLUSION

Because of the pleading deficiencies identified above, the Complaint is subject to dismissal. Because it appears to the Court that some of the Complaint's deficiencies are capable of being cured by amendment, it is dismissed with leave to amend. See Lopez, 203 F.3d at 1130-31 (holding that pro se litigant must be given leave to amend complaint unless it is absolutely clear that deficiencies cannot be cured by amendment). If Plaintiff still desires to pursue his claims against Defendants, he shall file a First Amended Complaint within thirty-five (35) days of the date of this Order remedying the deficiencies discussed above. Plaintiff's First Amended Complaint should bear the docket number assigned in this case; be labeled "First Amended Complaint"; and be complete in and of itself without reference to the original Complaint or any other pleading, attachment or document. The Clerk is directed to send Plaintiff a blank Central District civil rights complaint form, which Plaintiff is strongly encouraged to utilize.

///
///
///
///

**Plaintiff is admonished that, if he fails to timely file a First Amended Complaint, the Court will recommend that this action be dismissed with prejudice for failure to diligently prosecute.**

Dated: April 10, 2017

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge