I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY FIRST CLASS MAIL, POSTAGE PREPAID, TO (SEE BELOW) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF RECORD IN THIS ACTION ON THIS DATE

TO:     DATE:     DEPUTY CLERK:

Plaintiff   8/18/2017   N. Boehme

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MICHAEL WILSON,<br><br>            Plaintiff,<br><br>       v.<br><br>J. GASTELLO et al.,<br><br>            Defendants. | No. CV 16-09449 DOC (DFM)<br><br>MEMORANDUM AND ORDER DISMISSING FAC WITH LEAVE TO AMEND |

**I.**

**BACKGROUND**

On November 15, 2016, Michael Wilson ("Plaintiff"), a state prisoner at California Men's Colony in San Luis Obispo County ("CMC"), filed an "Affidavit/Declaration" in the United States District Court for the Northern District of California. Dkt. 1 ("Affidavit"). The Northern District court provided Plaintiff with two blank forms, a Complaint by a Prisoner and an In Forma Pauperis Application. Dkt. 2, 3. On December 1, Plaintiff used these forms to file a civil rights complaint under 42 U.S.C. § 1983 ("Complaint") and move for leave to proceed in forma pauperis. Dkt. 5, 6. About three weeks

later, the Northern District Court transferred the case to this Court because the Complaint described events that occurred at CMC. See Dkt. 9. On January 5, 2017, this Court granted Plaintiff's application to proceed in forma pauperis. Dkt. 12. On March 6, Plaintiff moved to amend the Complaint, adding additional allegations. Dkt. 14 ("Supplement"). The Court interpreted Plaintiff's motion as a request to supplement the Complaint. Dkt. 17. The Court dismissed the Complaint with leave to amend. Dkt. 19.

On June 19, 2017, Plaintiff filed a first amended complaint (the "FAC"). Dkt. 30. As best the Court can tell, Plaintiff names as defendants: (1) Josie Gastello, CMC's Warden, in her official capacity; (2) Katherin Lino, CMC's Health Care Compliance/Appeal Coordinator, in her individual and official capacity; (3) Dr. Camillo Guiang, Plaintiff's primary care physician; (4) Dr. Geoffery Chaffee, CMC's lead optometrist, in his individual and official capacity; (5) Dr. L. Sprague, CMC's Chief Physician, in his individual and official capacity; and (6) Patrick Denny, CMC's Associate Warden, in his individual and official capacity.[1] Id. at 19, 22-23.

In accordance with 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court must screen the FAC to determine whether the action is frivolous or malicious; fails to state a claim on which relief might be granted; or seeks monetary relief against a defendant who is immune from such relief.

## II.
## SUMMARY OF ALLEGATIONS

The FAC lists Plaintiff's grievances about his medical ailments and life at the prison, with few specific allegations explaining which prison official was involved or what exactly occurred. Plaintiff's complaints include the following:

---

[1] Plaintiff references alleged wrongdoing by other individuals and groups but does not name them as defendants.

**Disability Form**: On August 31, 2015, Dr. Guiang checked "No Disabilities" on a Disability Placement Program Verification form, despite Plaintiff suffering from "multiple disabilities." FAC at 2. Dr. Guiang instead checked the "Related Forms" box to refer to Plaintiff's lower bunk chrono, special handcuffing requirements, and other physical limitations. Id. at 2-3.

**Infection**: On March 20, 2017, Plaintiff had surgery to remove a 3 mm calcified stone. Id. at 3. He suffered a post-operative infection and a doctor prescribed amoxicillin. Id. Even though the surgeon wanted to see Plaintiff by April 27, Dr. Guiang did not schedule Plaintiff for a follow-up with the surgeon. Id. at 3, 7. Dr. Guiang ordered testing and claimed Plaintiff was "negative" for infections, but Plaintiff believes that a "complete test" was never done and that he has been exposed to "toxic black mold." Id. at 3, 24.

**Hip X-Rays**: On October 6, 2016, Plaintiff had x-rays performed of his pelvis and hips. Id. at 3. The x-rays showed moderate degenerative changes to Plaintiff's right hip. Id. Plaintiff requested insoles and physical therapy (he does not say from whom) but was "denied" them. Id. He was offered a walking cane instead. Id. at 8.

**Colonoscopy**: On October 8, 2014, Plaintiff had a colonoscopy. Id. at 4. He developed complications after the procedure. Id. Dr. Guiang ordered "less efficacious treatment" than a high fiber diet, i.e., a fiber tablet and antacids. Id. Dr. Guiang "falsified documents" to deny Plaintiff access to a gastrointestinal specialist. Id.

**Glaucoma Medication and Lenses**: Dr. Chaffee, an optometrist, prescribed Plaintiff glaucoma medication in October 2014. Id. at 4-5. Plaintiff alleges that Dr. Chaffee discontinued Plaintiff's brand-name glaucoma medication in November 2017[2] in retaliation for this lawsuit. Id. at 4-5.

---

[2] Presumably, Plaintiff means November 2016.

3

Plaintiff also alleges that Dr. Chaffee changed this prescription from the brand-name to the generic medication, despite knowing that the generic medication burned Plaintiff's eyes; this occurred in April 2017, possibly in retaliation for a grievance Plaintiff filed against Dr. Chaffee. Id. at 5, 8, 15. Dr. Sprague violated Plaintiff's due process rights by delaying responding to and eventually denying Plaintiff's "emergency appeal" with respect to this medication, which Plaintiff filed on March 16, 2017. Id. at 5. At some point, Dr. Chaffee prescribed Plaintiff "defective transition lenses." Id. at 5-6.

**Racial Discrimination**: Plaintiff alleges "racial bias and discrimination" against black inmates at his prison, including denial of access to substance abuse and other programs. Id. at 7, 9-11, 26. Elsewhere, however, Plaintiff claims that he is denied access to these programs because he is a "lifer." Id. at 9, 25. Plaintiff describes a "Green Wall alt-right" of correctional officers and doctors who falsify test scores in order to give white and Mexican inmates an advantage. Id. at 6, 11, 26-27.

**Dirty Urinalysis**: On September 23, 2014, Plaintiff received a "dirty urinalysis" due to his prescription medication and was punished unfairly. Id. at 25. Shortly after he filed a complaint about this, he had "confidential information placed in his C-file." Id.

**Mail System and Access to Courts**: Plaintiff alleges that the prison is an "organized crime unit," and that prison guards obstruct prisoners' access to courts and interfere with their mail. Id. at 10, 17. He notes, for example, that his "confidential legal mail" from the Federal Bureau of Investigation was opened in February 2017, and Plaintiff is uncertain if he received all of his documents. Id. at 10. He asks the Court to send a United States Marshal to pick up "thousands of pages of medical documents" that the prison will not copy for him. Id. at 17. He shares a case number with another inmate, which caused a mail mix-up. Id. at 13. He has also been denied access to the Bay

View Newspaper. Id.

**Grievance System**: Associate Warden Denny falsely claimed to "Internal Affairs" that one of Plaintiff's appeals was "screened out," when in fact Denny and another individual colluded to stonewall Plaintiff's appeal. Id. at 25. Plaintiff claims that his due process rights have been violated by the prison taking too long to respond to his grievances. Id. at 9. Dr. Sprague "coerced" Plaintiff into placing a grievance into the "medical box" so that it would reach its destination, but it took 46 days instead of 5 days for the prison to respond. Id. at 9.

**Medical Information**: In August 2016, Warden Gastello allowed Brad T. Barcklay, Psy D., to access Plaintiff's medical information without Plaintiff's permission. Id. at 8, 28. Dr. Barcklay relied on these records to give Plaintiff a higher risk assessment. Id. at 8. As a result, Plaintiff was denied parole. Id. at 8, 28. Plaintiff has also been denied access to his health records. Id. at 11.

**General Medical Care Complaints**: Plaintiff suffers from "spinal cord trauma" and other ailments, but "health care providers" have refused to perform MRIs and CT scans. Id. at 11-12.

## III.
## STANDARD OF REVIEW

The Court's screening of the FAC under the foregoing statutes is governed by the following standards: A complaint may be dismissed for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether the complaint states a claim on which relief may be granted, its allegations of material fact must be taken as true and construed in the light most favorable to

Plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). Since Plaintiff is appearing pro se, the Court must construe the allegations of the complaint liberally and afford Plaintiff the benefit of any doubt. Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)). A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (holding that to avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citation omitted)).

     If the Court finds that a complaint should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). The Court should grant leave to amend if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (noting that "[a] pro se litigant must be given leave to amend his or her complaint, and

some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment"). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the Court may dismiss without leave to amend. Cato, 70 F.3d at 1105-06.

## IV.

## DISCUSSION

### A. Plaintiff's Failure to State Cognizable Legal Theories and Sufficient Facts

Like Plaintiff's initial Complaint, the FAC suffers from numerous deficiencies.

**Conclusory Legal Theories**: Plaintiff cites the Equal Protection Clause, the Americans with Disabilities Act, the Tenth Amendment, the Eleventh Amendment, the Double Jeopardy Clause, and the Confrontation Clause. See FAC at 12-13, 24. He provides no facts supporting these legal theories, and some of them bear no apparent relation to Plaintiff's suit. For example, the Eleventh Amendment bars suits for money damages in federal court against a state and its agencies. See Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007).

**No Personal Involvement**: Plaintiff names Lino as a defendant but does not allege her personal involvement in any of the alleged wrongdoing. Plaintiff also fails to allege personal involvement by any Defendant in the alleged racial discrimination and falsification of test scores, the dirty urinalysis, access to courts and interference with mail, the presence of "black mold" in the prison, Plaintiff's request for insoles and physical therapy, and Plaintiff's general complaints of deficient medical care. In order to state a § 1983 claim, Plaintiff must allege that particular defendants personally participated in the alleged rights deprivations. See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

7

**Official Capacity Claims**: Plaintiff sues Warden Gastello, Dr. Chaffee, Dr. Sprague, Associate Warden Denny, and possibly Dr. Guiang in their official capacity. An "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." Id. Here, all of the Defendants are officers or agents of the California Department of Corrections ("CDCR"). Therefore, all of Plaintiff's claims against Defendants in their official capacities are tantamount to claims against the CDCR.

However, states, state agencies, and state officials sued in their official capacities are not persons subject to civil rights claims for damages under 42 U.S.C. § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 64–66 (1989); see also Hafer v. Melo, 502 U.S. 21, 30 (1991) (clarifying that the Eleventh Amendment does not bar suits against state officials sued in their individual capacities nor for prospective injunctive relief against state officials sued in their official capacities). The CDCR is an agency of the State of California and, therefore, entitled to Eleventh Amendment immunity. See Brown v. Cal. Dep't of Corrections, 554 F.3d 747, 752 (9th Cir. 2009).

To overcome the Eleventh Amendment bar on federal jurisdiction over suits by individuals against a State and its instrumentalities, either the State must have "unequivocally expressed" its consent to waive its sovereign immunity or Congress must have abrogated it. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99–100 (1984). California has consented to be sued in its own courts pursuant to the California Tort Claims Act, but this consent is not consent to suit in federal court. See BV Engineering v. Univ. of Cal., Los Angeles, 858 F.2d 1394, 1396 (9th Cir. 1988); see also Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985) (holding that Art. III, § 5 of California Constitution is not waiver of state's Eleventh Amendment

immunity). Furthermore, Congress has not abrogated State sovereign immunity against suits under 42 U.S.C. § 1983.

Accordingly, the Eleventh Amendment bars Plaintiff's claims for damages against the Defendants in their official capacity.

**Individual Capacity Claims**: Plaintiff fails to state sufficient facts to support his legal theories against the Defendants in their individual capacity.[3]

First, Plaintiff's claims against Dr. Sprague and Associate Warden Denny are almost entirely based on their supervisory status. Supervisory personnel generally are not liable under 42 U.S.C. § 1983 on any theory of respondeat superior or vicarious liability, in the absence of a state law imposing such liability. See Redman v. Cty. of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991). A plaintiff must allege either (1) the supervisor's personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011). Here, Plaintiff has done neither.

Second, Plaintiff fails to state deliberate indifference claims against Dr. Chaffee or Dr. Guiang. To establish an Eighth Amendment claim that prison authorities provided inadequate medical care, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976). A plaintiff must demonstrate confinement under conditions posing a risk of "objectively, sufficiently serious" harm and that the officials had a "sufficiently culpable state of mind" in denying the proper medical care. Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002) (quoting Wallis v. Baldwin, 70 F.3d 1074, 1076

---

[3] Plaintiff does not name Warden Gastello in her individual capacity. If Plaintiff did, his claims against Warden Gastello would suffer from the same deficiencies listed in this section.

(9th Cir. 1995)). A defendant "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). An inadvertent failure to provide adequate medical care, mere negligence or medical malpractice, a mere delay in medical care (without more), or a difference of opinion over proper medical treatment, are all insufficient to constitute an Eighth Amendment violation. Estelle, 429 U.S. at 105-07; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Some of Plaintiff's allegations do not show a substantial risk of serious harm, such as Dr. Guiang's filling out a Disability Placement Program verification form. Other allegations do not suggest a sufficiently culpable state of mind: e.g., (1) Dr. Guiang's failing to schedule Plaintiff for a follow-up appointment with a surgeon after Plaintiff's tests were negative for infection; (2) Dr. Guiang's denying Plaintiff access to a gastrointestinal specialist; and (3) Dr. Chaffee prescribing defective lenses and generic glaucoma medication. Plaintiff alleges no facts suggesting that these acts reflect anything more than, at most, negligence or malpractice. Still other allegations amount to no more than a difference of opinion in treatment, such as Dr. Chaffee's prescribing generic instead of brand-name medication or Dr. Guiang's prescribing a fiber tablet rather than a high-fiber diet. Plaintiff does not explain what documents Dr. Guiang supposedly falsified. For these reasons, Plaintiff has not stated an Eighth Amendment claim on which relief may be granted, even taking his allegations as true.

Third, Plaintiff has not stated a due process violation. According to Plaintiff, Dr. Sprague denied Plaintiff's "emergency appeal" with respect to Plaintiff's glaucoma medication, and the denial took 46 rather than the

10

"required" 5 days. Prisoners have no stand-alone due process rights related to the administrative grievance process.[4] Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to specific grievance process). Plaintiff's due process claim against Associate Warden Denny—that Denny colluded with another official to "stonewall" one of Plaintiff's appeals—is completely conclusory, and the Court is unable to address it. Plaintiff claims that Dr. Barckley's access to and reliance on Plaintiff's medical records led to Plaintiff's parole denial. Plaintiff does not allege that he had no notice of or opportunity to be heard during the parole hearing. He therefore has not stated a due process claim. See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 9, 15 ("The Due Process Clause applies when government action deprives a person of liberty or property. . . . There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. . . . The Nebraska procedure affords an opportunity to be heard, and when parole is denied it informs the inmate in what respects he falls short of qualifying for parole; this affords the process that is due under these circumstances. The Constitution does not require more."). Furthermore, Plaintiff had no due process right to see his file before the hearing. Id. at 5, 15-16 (holding that

---

[4] If Plaintiff means to state a First Amendment claim, prisoners have a First Amendment right to petition the government through the prison grievance process. See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Interference with the grievance process may, in certain circumstances, implicate the First Amendment, if it resulted in a denial of the inmate's access to the courts. However, Plaintiff has not explained how his right of access to the courts has been interfered with, or what actual injury he has suffered. See Lewis v. Casey, 518 U.S. 343, 351-53 (1996) (noting that to have standing to assert denial of access claim, inmate must demonstrate that official acts or omissions hindered his efforts to pursue nonfrivolous legal claim).

Constitution does not require that prisoners hear adverse testimony or cross-examine witnesses against them at parole hearing).

Fourth, Plaintiff has not stated a First Amendment retaliation claim. In the prison context, a First Amendment retaliation claim requires five basic elements: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009) (citation omitted). Plaintiff has not alleged facts showing that each of these elements are met with respect to Dr. Chaffee's (or any other Defendant's) conduct. It is unclear from the FAC whether (1) Dr. Chaffee discontinued Plaintiff's glaucoma medication entirely or merely changed Plaintiff's prescription to a generic version, (2) why Plaintiff believes that Dr. Chaffee took this action in retaliation for protected conduct, (3) when this occurred, and (4) what protected activities were involved—i.e., Plaintiff's grievances, this lawsuit, or something else entirely.

In these ways, Plaintiff fails to state claims on which relief might be granted, making dismissal appropriate.

**B.  The FAC Violates Federal Rule of Civil Procedure 8**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555. Rule 8(d)(1) instructs that each allegation be "simple, concise, and direct." A complaint violates Rule 8 if a defendant would have difficulty responding to the complaint. Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1059 (9th Cir. 2011). This Court has discretion to dismiss for failure to comply with the requirements of Rule 8 even when the complaint is not

"wholly without merit." McHenry v. Renne, 84 F.3d 1172, 1179 (9th Cir. 1996).

Plaintiff did not submit the FAC on the Central District's civil rights complaint form (although the FAC includes out-of-order pages from the form, see FAC at 18-26), which pro se litigants are encouraged to use. Also, the FAC is generally difficult to decipher and many of Plaintiff's claims are disorganized, hard to understand, and unsupported by facts. It is often unclear which claims pertain to which Defendants. In any amended complaint, Plaintiff must clearly set out which of his claims pertain to which Defendants and should support those claims with relevant facts showing each Defendant's involvement. If he cannot do so, he should omit that claim or Defendant from the amended complaint.

## V.
## CONCLUSION

Because of the pleading deficiencies identified above, the FAC is subject to dismissal. Because it appears to the Court that some of the FAC's deficiencies are capable of being cured by amendment, it is dismissed with leave to amend. See Lopez, 203 F.3d at 1130-31 (holding that pro se litigant must be given leave to amend complaint unless it is absolutely clear that deficiencies cannot be cured by amendment). If Plaintiff still desires to pursue his claims against Defendants, he shall file a Second Amended Complaint within thirty-five (35) days of the date of this Order remedying the deficiencies discussed above. Plaintiff's Second Amended Complaint should bear the docket number assigned in this case; be labeled "Second Amended Complaint"; and be complete in and of itself without reference to the original Complaint or any other pleading, attachment or document. The Clerk is directed to send Plaintiff a blank Central District civil rights complaint form, which Plaintiff is strongly encouraged to utilize.

**Plaintiff is admonished that, if he fails to timely file a Second Amended Complaint, the Court will recommend that this action be dismissed with prejudice for failure to diligently prosecute.**

Dated: August 18, 2017

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge